IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEITH WILLIAMS,

    Plaintiff,                  No. CIV S-06-2151 WBS DAD P

    vs.

DAVID RAMIREZ, et al.,         ORDER AND

    Defendants.            FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under 42 U.S.C. § 1983. Pending before the court is a motion for summary judgment brought on behalf of defendant Ramirez pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has filed an opposition to the motion, and defendant has filed a reply.

**BACKGROUND**

        Plaintiff is proceeding on his original complaint. Therein, he alleges as follows. On July 21, 2005, he received his morning meal but was unhappy with the serving portion. Plaintiff informed the supervising officer and was referred to defendant Ramirez. Defendant Ramirez made it clear to plaintiff that he would not be getting anything else to eat and ordered plaintiff to sit down. Plaintiff complied with the order, but then noticed a hair in his food. Plaintiff again attempted to explain the situation to defendant Ramirez, but he refused to listen.

1

Plaintiff asked to speak with a sergeant, but defendant Ramirez told him to leave before he was shot. Plaintiff asked a second time to speak with a sergeant, and defendant Ramirez told plaintiff to put his hands behind his back and handcuffed him, causing plaintiff severe pain in his left wrist. Another officer then escorted plaintiff to an isolation cell. After the handcuffs were removed, plaintiff noticed blood and discoloration on his left wrist. Plaintiff claims that defendant Ramirez used excessive force in violation of the Eighth Amendment when he handcuffed him too tightly. Plaintiff requests declaratory judgment and damages. (Compl. at 3-4 & Attachs.)

**SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as

/////

whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the

court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On August 21, 2007, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

**OTHER APPLICABLE LEGAL STANDARDS**

I. Civil Rights Act Pursuant to 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named

4

defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

II. Eighth Amendment and Claims of Excessive Use of Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment prohibited by the United States Constitution. Whitley v. Albers, 475 U.S. 312, 319 (1986). See also Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley, 475 U.S. at 320). The plaintiff must show that objectively he suffered a sufficiently serious deprivation and that subjectively each defendant had a culpable state of mind in allowing or causing the plaintiff's deprivation to occur. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

"The objective component of an Eighth Amendment claim is . . . contextual and responsive to 'contemporary standards of decency.'" Hudson, 503 U.S. at 8 (quoting Estelle, 429 U.S. at 103). The objective prong of the test requires the court to consider whether the alleged wrongdoing was harmful enough to establish a constitutional violation. Hudson, 503 U.S. at 8; Wilson, 501 U.S. at 298. In the context of an excessive use of force claim, however, the

/////

objective prong does not require a prisoner to show a "significant injury" in order to establish that he suffered a sufficiently serious constitutional deprivation. Hudson, 503 U.S. at 9-10.

The subjective prong of the two-part test is also contextual. Wilson, 501 U.S. at 299. A prison official acts with the requisite "culpable mind" with respect to an excessive use of force claim if he acts maliciously and sadistically for the purpose of causing harm. Whitley, 475 U.S. at 320-21. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley, i.e., whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7.

III. Qualified Immunity

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a court is presented with a qualified immunity defense, the central questions for the court are (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right and (2) whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001).

Although the court was once required to answer these questions in order, the United States Supreme Court has recently held that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." Pearson v. Callahan, ___ U.S. ___, ___, 129 S. Ct. 808, 818 (2009). In this regard, if a court decides that plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. Likewise, if a court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court may end further inquiries concerning qualified immunity at that point without

determining whether the allegations in fact make out a statutory or constitutional violation. Pearson, 129 S. Ct. at 818-21.

In deciding whether the plaintiff's rights were clearly established,"[t]he proper inquiry focuses on whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted' . . . or whether the state of the law in [at the relevant time] gave 'fair warning' to the officials that their conduct was unconstitutional." Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) (quoting Saucier, 533 U.S. at 202). The inquiry must be undertaken in light of the specific context of the case. Saucier, 533 U.S. at 201. Because qualified immunity is an affirmative defense, the burden of proof initially lies with the official asserting the defense. Harlow, 457 U.S. at 812; Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992); Benigni v. City of Hemet, 879 F.2d 473, 479 (9th Cir. 1989).

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I. Defendant's Statement of Undisputed Facts and Evidence

Defendant's statement of undisputed facts is supported by citations to declarations by defendant Ramirez and Dr. Swingle, the Chief Medical Officer at High Desert State Prison. Defendant's statement of undisputed facts is also supported by citations to plaintiff's complaint, plaintiff's deposition transcript, and plaintiff's medical records.

The evidence submitted by defendant Ramirez establishes the following. On July 21, 2005, plaintiff was in the dining hall at Folsom State Prison when he received his morning breakfast. There is a sign above the window where inmates receive their food trays advising inmates that they must raise any problems with their food trays before they leave the window area. On the day in question, plaintiff believed that he had received a small portion of eggs and spoke with defendant Ramirez about getting more eggs. Defendant Ramirez told plaintiff that he would not get an additional portion of eggs and ordered him to take a seat. Plaintiff left the area and walked to a table to sit down. Plaintiff then allegedly noticed a hair in his food and approached defendant Williams again and inquired whether he would have to eat the hair.

Defendant Ramirez told plaintiff that he would not be allowed to exchange his plate. (Def.'s SUDF 1-7 & 9, Def.'s Ex. A., & Pl.'s Compl. at 3.)

Plaintiff asked to speak with a sergeant, but defendant Ramirez told him that he should leave before he "got shot." Plaintiff asked to speak with a sergeant a second time, but defendant Ramirez ordered him to stand against the wall and handcuffed him. Plaintiff alleges that defendant Ramirez applied the handcuffs in an overly tight manner. Specifically, plaintiff complained that the left handcuff was too tight. He did not complain about his right handcuff because it did not cause him pain. Another officer then escorted plaintiff to a holding cell and removed the handcuffs. Plaintiff alleges that he felt pain in his left wrist and saw blood on it. Plaintiff requested medical attention, and subsequently, a medical technical assistant ("MTA") arrived at plaintiff's cell to evaluate plaintiff's wrist. (Def.'s SUDF 10-18 & Def.'s Ex. A.)

On CDCR Form 7219, the MTA noted that plaintiff complained of left wrist pain, but he had no objective signs of injury aside from a superficial abrasion and a slight pinkish color to the skin of his left wrist. The MTA advised plaintiff to follow-up with a doctor if the pain persisted. An x-ray taken the following day revealed no fracture. Although plaintiff saw medical personnel multiple times during the course of the year, he saw medical personnel for this left wrist pain on only one other occasion, August 3, 2005. On April 25, 2006, plaintiff again saw medical personnel for left wrist pain but that medical visit was as a result of an injury plaintiff sustained that day, and not as a result of the July 21, 2005, handcuff incident. (Def.'s SUDF 19-24, 27 & Def.'s Exs. A-D.)

According to Dr. Swingle, the MTA's findings are inconsistent with a compression injury that one would expect from overly tight handcuffs. An abrasion results from rubbing and not compression. The abrasion on plaintiff's left wrist is consistent with a self-inflicted injury that results when an inmate struggles after he is placed in handcuffs. When an inmate struggles in handcuffs that are placed on him securely, the skin on his wrist will rub on the steel of the handcuff and cause an abrasion. In contrast, if handcuffs are placed too tightly on

8

an inmate's wrist, one would expect circulation to be impeded, which would result in temporary discoloration, numbness, or bruising, depending on the length of time the handcuffs are in place. (Def.'s SUDF 35-40 & Def.'s Exs. B & D.)

On July 21, 2005, defendant Ramirez's duty was to help maintain safety, security, and order in the dining hall. Although there are several hundred inmates who eat at one time, there are only a handful of floor officers providing coverage in the dining hall. Defendant Ramirez handcuffed plaintiff and had him removed from the dining hall after he refused to follow a direct order to sit down. Defendant Ramirez declares that he did not intend to cause plaintiff harm, but he had to place handcuffs securely on plaintiff to prevent him from escaping them and to prevent a potentially dangerous situation from escalating. Defendant Ramirez's standard procedure is to check to make sure handcuffs are not too tight if an inmate complains. However, in defendant Ramirez's experience, inmates complain about the tightness of handcuffs to manipulate staff to remove the cuffs so the inmate has an opportunity to resist. In defendant Ramirez's view, he used only the minimal amount of force necessary in light of the circumstances. (Def.'s SUDF 28-34 & Def.'s Ex. E.)

II. <u>Defendant's Arguments</u>

Defense counsel argues that defendant Ramirez is entitled to summary judgment in his favor because there is no evidence of the excessive use of force in this case. First, defense counsel argues that there is no evidence that plaintiff sustained an objectively serious injury on July 21, 2005. Counsel points to plaintiff's medical records which indicate that he experienced a superficial abrasion and a slight pinkish color on the skin of his left wrist. In addition, counsel notes that an x-ray taken the following day returned negative findings. According to defense counsel, the evidence before the court establishes that plaintiff's injury was de minimis, precluding recovery under § 1983. (Def.'s Mot. for Summ. J. at 5-7.)

Second, defense counsel argues that there is no evidence that defendant Ramirez intended to harm plaintiff. Counsel contends that the minor nature of any injury demonstrates

that defendant Ramirez had no sadistic or malicious intent towards plaintiff. Moreover, according to counsel defendant Ramirez had a duty to maintain safety and security in the dining hall, which is why he immediately handcuffed plaintiff and had him removed him from the area. Counsel also notes that, in defendant Ramirez's experience, inmates will complain about the tightness of handcuffs to manipulate staff so that they will remove the cuffs, allowing the inmate an opportunity to resist. Counsel also argues that if plaintiff had complained that his handcuffs were too tight, defendant Ramirez would have checked the handcuffs to ensure that he was not suffering any harm. (Def.'s Mot. for Summ. J. at 7-8.)

Third, defense counsel argues that there is no evidence that defendant Ramirez proximately caused plaintiff's injury. Although plaintiff alleges that his handcuffs were too tight, the MTA's findings as documented in plaintiff's medical records are inconsistent with a compression injury that would have resulted if that was the case. Instead, plaintiff had only a superficial abrasion, which most likely resulted from rubbing and not compression. Counsel contends that plaintiff's abrasion is therefore consistent with a self-inflicted injury that results when an inmate struggles after he is placed in handcuffs. (Def.'s Mot. for Summ. J. at 8.)

Finally, defense counsel argues that defendant Ramirez is entitled to qualified immunity. In this regard, counsel contends that there is no evidence that defendant Ramirez violated a clearly established right. Although counsel does not dispute that plaintiff has a right to be free from excessive use of force, counsel argues that there is no evidence that defendant Ramirez violated that right. Rather, counsel argues that the evidences establishes that defendant Ramirez used only the minimal amount of force necessary for the given situation. Counsel asserts that in handcuffing plaintiff, defendant Ramirez did not act with a sadistic or malicious state of mind, but instead acted with the sole purpose of maintaining control over plaintiff. (Def.'s Mot. for Summ. J. at 9-10.)

Moreover, defense counsel argues, a reasonable person in defendant Ramirez's position would have believed that his conduct was lawful. Counsel contends that the evidence

shows that defendant Ramirez handcuffed plaintiff only after he refused a direct order to return to his seat. Counsel notes that several hundred inmates were in the dining hall with only a handful of floor officers to maintain control and that defendant Ramirez could not be expected to allow his confrontation with plaintiff to escalate. In this regard, counsel contends that a reasonable person in defendant's position would not have thought he was violating plaintiff's constitutional rights by placing plaintiff in handcuffs in order to remove him from the dining hall to maintain order and the security of the institution. (Def.'s Mot. for Summ. J. at 10.)

III. Plaintiff's Opposition

Plaintiff's opposition to defendant Ramirez's motion for summary judgment is difficult to decipher and in many respects fails to directly address defendant's arguments. It is, however, supported by a statement of disputed facts and a memorandum of points and authorities. It is also supported by citations to the transcript of plaintiff's deposition and his medical records.

In relevant part, plaintiff argues that defendant Ramirez engaged in the excessive use of force in violation of plaintiff's constitutional rights under the Eighth Amendment. Plaintiff contends that his medical records support the fact that he suffered a physical injury and demonstrate that he had discoloration of his left wrist, an abrasion, and needed medication for the continuous pain which he suffered as a result. Although x-rays did not reveal a fracture to his wrist, plaintiff argues that he experienced swelling and painful tenderness in the area where defendant Ramirez placed the handcuffs on him too tightly. Plaintiff rejects defense counsel's argument that defendant Ramirez did not intend to cause him harm because, plaintiff contends, he complained to the defendant four times that the handcuffs were too tight. Plaintiff also rejects defense counsel's argument that defendant Ramirez did not proximately cause his injuries. Plaintiff contends that all of the events he mentions in his complaint occurred on July 21, 2005, in the main dining hall with defendant Ramirez. According to plaintiff, he suffered a left wrist

/////

injury as well as trauma as a direct result of defendant Ramirez's misconduct. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 8-13; Pl.'s SDF 12, 14, 19, 20, 26, 33, 37.)

Plaintiff also argues that defendant Ramirez is not entitled to qualified immunity, contending that a jury should decide whether defendant Ramirez had a duty or obligation to loosen the handcuffs. According to plaintiff, if defendant Ramirez consciously disregarded an inmate's complaints that he was in severe pain, then the defendant assumed liability for compensatory and punitive damages. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 14-15.)

IV. Defendant's Reply

In reply, defense counsel argues that the evidence establishes that defendant Ramirez applied reasonable force in this case. Counsel contends that the undisputed facts are that defendant Ramirez placed plaintiff in handcuffs only after plaintiff refused a direct order to sit down. Counsel further contends that defendant's use of handcuffs was necessary to prevent the confrontation between defendant Ramirez and plaintiff from potentially escalating in an area where inmates significantly outnumber correctional officers. Defense counsel notes that defendant Ramirez had to restrain plaintiff so that an officer could safely remove him from the area. (Def.'s Reply at 2.)

Defense counsel reiterates that plaintiff only sustained a superficial abrasion, a slight pinkishness on his wrist and sought follow-up medical care for the slight injury on only one occasion. In counsel's view, plaintiff's injuries were innocuous at best and insufficient to support a § 1983 claim in any event. In this regard, defense counsel emphasizes that the Eighth Amendment prohibits constitutional recognition of a de minimis use of force. (Def.'s Reply at 3.) Counsel also reiterates that there is no evidence that defendant Ramirez intended to harm plaintiff or cause him injury. Counsel contends that the only evidence of defendant Ramirez's state of mind is the defendant's own declaration in which he declares that he did not intend to cause plaintiff harm and was simply carrying out his duties in securing the dining hall and preventing the confrontation from escalating. Counsel further reiterates that the slight injury

suffered by plaintiff is inconsistent with overly-tight handcuffs and more consistent with rubbing likely caused by plaintiff's struggle in the handcuffs. (Def.'s Reply at 3-4.)

Finally, defense counsel reiterates that defendant Ramirez is entitled to qualified immunity. In this vein counsel contends that defendant Ramirez did not violate plaintiff's constitutional rights and, even if he did, a correctional officer in his position would have reasonably believed his actions were lawful under the circumstances. (Def.'s Reply at 4.)

**ANALYSIS**

I. Plaintiff's Excessive Force Claim

"When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, 503 U.S. at 9. Here, the court finds that a reasonable jury could conclude that defendant's actions were done maliciously and sadistically to cause harm and inflict pain and not to maintain or restore discipline. See LaLonde v. County of Riverside, 204 F.3d 947, 960 (9th Cir. 2000) ("The issue of tight handcuffing is usually fact-specific and is likely to turn on the credibility of witnesses.").[1]

Defense counsel argues that defendant Ramirez is entitled to summary judgment because plaintiff's injury was, at most, de minimis. However, as counsel acknowledges, the Eighth Amendment standard precludes constitutional recognition of claims involving a de minimis use of force, not of claims in which a de minimis injury results from the use of excessive

---

[1] The Ninth Circuit has repeatedly cautioned lower courts to take care in deciding cases involving excessive use of force claims at the summary judgment stage. In this regard, the court has explained that:

> Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.

Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002). See also Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005); Lolli v. County of Orange, 351 F.3d 410, 415-16 (9th Cir. 2003). This case is no different.

force.  See Hudson, 503 U.S. at 9 (a prisoner does not need to show "some arbitrary quantity of injury"); Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (under the Eighth Amendment the inquiry where there is a claim of excessive use of force is on the amount of force used, not the nature or severity of the injury inflicted).

Here, drawing all reasonable inferences from the evidence in plaintiff's favor as required on summary judgment, the court cannot say as a matter of law that plaintiff's claims involve a de minimis use of force or that plaintiff suffered a de minimis injury as a result of defendant's alleged use of force. As both parties acknowledge, when the MTA arrived at plaintiff's cell to evaluate his wrist, plaintiff was observed to have suffered an abrasion on his left wrist and the wrist appeared pinkish. The MTA also recorded that plaintiff was experiencing pain in the area and instructed him to follow-up with the doctor if the pain persisted. (Def.'s Ex. B.) Plaintiff went to the infirmary later that same day and asked to see a doctor about his left wrist injury. After examining plaintiff's wrist, the doctor wrapped it with an ace bandage, provided plaintiff alcohol to clean the abrasion, and ordered an x-ray of plaintiff's wrist. (Pl.'s Dep. at 45.)

On the following day, plaintiff's x-ray came back negative for a wrist fracture. (Def.'s Ex. C.) Plaintiff's doctor told him that his injury appeared to be a strain or sprain and prescribed him Motrin for the pain. According to plaintiff's sworn deposition testimony, he experienced pain, at times unbearable, in his left wrist for the next five to six months. He also suffered numbness and tingling, sometimes all day, as well as light swelling around the wrist that required him to go to the infirmary on a number of occasions for ice. (Pl.'s Dep. at 11 & 46-50.) Given this unchallenged evidence, the court finds that a reasonable jury could conclude that defendant Ramirez utilized more than de minimis force against plaintiff and that plaintiff suffered more than a de minimis injury as a result.

Defense counsel also argues that there is no evidence that defendant Ramirez intended to cause plaintiff harm and refers to defendant Ramirez's declaration in which he

declares under penalty of perjury as much. However, plaintiff has testified under oath to circumstances that, if believed, are sufficient to prove defendant Ramirez's intent to cause harm. According to plaintiff, his initial encounter with defendant Ramirez regarding his dissatisfaction with his food tray was respectful. Plaintiff was not agitated or angry and did not swear at defendant Ramirez. After Ramirez denied his request for a different food tray, plaintiff asked if there was a sergeant around and asked to speak with him. In response, defendant Ramirez threatened to shoot plaintiff. Ramirez then told plaintiff to get up against the wall and handcuffed him. Plaintiff did not resist defendant Ramirez, but as soon as the handcuffs were put on plaintiff's left wrist, he told Ramirez that the left cuff was too tight and asked Ramirez why he was putting the handcuffs on so tight. Plaintiff also complained at least four times about the tightness of the handcuffs, but defendant Ramirez ignored him. (Pl.'s Dep. at 30-34, 68 & Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 11.) Based on this evidence, the court finds that a reasonable jury could conclude that defendant Ramirez intended to cause plaintiff harm and was not acting solely to maintain or restore discipline.[2]

Finally, defense counsel argues that there is no evidence that defendant Ramirez proximately caused plaintiff any injury. However, the defense has submitted evidence that would appear to contradict this argument. Specifically, defense counsel has submitted a declaration by Dr. Swingle, Chief Medical Officer at High Desert State Prison, in which he states that plaintiff's wrist injuries are consistent with a self-inflicted injury that results when an inmate struggles after he is placed in handcuffs. According to Dr. Swingle, if an officer places handcuffs too tightly on an inmate's wrist, one would expect circulation to be impeded which in turn would result in

/////

---

[2] Of course, a person's state of mind is generally a factual issue, often unsuitable for resolution by way of summary judgment. Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999). This is because direct evidence of a defendant's improper motive to violate a plaintiff's constitutional rights will only rarely be available and it will almost always be necessary to infer motive from circumstantial evidence. 192 F.3d at 1302.

temporary discoloration, numbness, or bruising, and not an abrasion, depending on the length of time the handcuffs were in place. (Def.'s Ex. D.)

If plaintiff had only suffered an abrasion after the alleged incident with defendant Ramirez, defense counsel's argument might be persuasive. However, as Dr. Swingle and defense counsel both acknowledge, and as is documented in plaintiff's medical records, plaintiff also experienced a pinkish discoloration of his left wrist consistent with a compression injury. (Def.'s Ex. B.) In addition, as noted above, plaintiff has testified under oath to experiencing numbness in his left wrist, which is also consistent with a compression injury according to Dr. Swingle. (Pl.'s Dep. at 49-50.) Under these circumstances, the court finds that a reasonable jury could conclude that defendant Ramirez's use of force was the actual and proximate cause of plaintiff's wrist injury.

At summary judgment, the court may not weigh the parties' evidence or determine the truth of the matters asserted by the parties; rather the court is required only to determine whether there is a genuine issue of material fact appropriately resolved by trial. See Summers v. A. Teichert & Son. Inc., 127 F.3d at 1152. For the reasons discussed above, the court finds that there are material questions of fact in dispute surrounding the confrontation between defendant Ramirez and plaintiff on July 21, 2005, including the amount of force defendant Ramirez used, the circumstances under which he used that force, and with respect to injuries suffered by plaintiff as a result. Accordingly, defendant Ramirez's motion for summary judgment in his favor on plaintiff's excessive force claim should be denied. See Lolli v. County of Orange, 351 F.3d 410, 420-21 (9th Cir. 2003) (reversing district court's grant of summary judgment in favor of defendant jail deputies based upon the conclusion that disputed issues of material fact were raised by plaintiff's deposition testimony and that from that evidence a jury could reasonably infer that the deputies were aware of the serious condition and acted with the requisite culpable state of mind).

/////

## II. Qualified Immunity

The facts alleged in this case, taken in the light most favorable to plaintiff, are sufficient, if proven, to demonstrate that defendant Ramirez violated plaintiff's rights under the Eighth Amendment. Moreover, the state of the law in 2005 clearly would have given defendant Ramirez fair warning that his alleged use of excessive force was unconstitutional. As the United States Supreme Court has recognized:

> [G]eneral statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though "the very action in question has [not] previously been held unlawful."

United States v. Lanier, 520 U.S. 259, 271 (1997) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). In this regard, it was well established by 2005 that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley, i.e., whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7. Here, defendant Ramirez was on notice that he could not intentionally use handcuffs in a manner intended to inflict injury on plaintiff. Accordingly, defendant Ramirez is not entitled to summary judgment in his favor with respect to the affirmative defense of qualified immunity. See Lolli, 351 F.3d at 421-22 (where material facts were in dispute precluding summary judgment in defendants' favor on the substantive claim, summary judgment precluded on qualified immunity grounds as well).

**OTHER MATTERS**

Also pending before the court is defendant Ramirez's motion to strike, which plaintiff has opposed. On December 19, 2008, the court vacated scheduling order dates related to pretrial statements, pretrial conference, and jury trial. Before plaintiff received the court's order, he filed a pretrial statement and other trial-related documents. Defendant Ramirez has moved to

strike the filings as premature because the court has not ruled on the instant motion for summary judgment.

If the assigned district judge adopts the findings and recommendations herein, the undersigned will re-set a schedule for this litigation. The further scheduling order will include filing dates for pretrial statements, pretrial conference, and jury trial, so plaintiff's pretrial statement and other trial-related documents will no longer be premature. Accordingly, the court will deny defendant's motion to strike.

The court notes for both parties' benefit, however, that in addition to plaintiff's Eighth Amendment excessive force claim, plaintiff's complaint appears to state a cognizable First Amendment retaliation claim. See Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005). Plaintiff also appears to have exhausted administrative remedies with regards to his First Amendment retaliation claim. (Compl. Attach.)

The court has conducted a cursory review of plaintiff's pretrial statement and trial-related documents. Therein, plaintiff only appears to raise his Eighth Amendment excessive force claim. If plaintiff wishes to abandon his First Amendment retaliation claim, he is free to do so. However, if plaintiff wishes to proceed on his First Amendment retaliation claim, he will need to file an amended pretrial statement, which the court will grant him leave to do in its further scheduling order if these findings and recommendations are adopted.

**CONCLUSION**

For the reasons set forth above, IT IS HEREBY ORDERED that defendant's March 16, 2009 motion to strike (Doc. No. 62) is denied.

IT IS HEREBY RECOMMENDED that defendant's October 24, 2008 motion for summary judgment (Doc. No. 41) be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file and

serve written objections with the court. A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations." Any reply to objections shall be filed and served within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 12, 2009.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
will2151.57